**ORIGINAL**

# In the United States Court of Federal Claims

No. 14-229 C
Filed: July 30, 2014

**FILED**

JUL 30 2014

U.S. COURT OF
FEDERAL CLAIMS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| | * | |
| | * | |
| MICHAEL HARRIS, | * | Jurisdiction; |
| | * | Motion to Dismiss, RCFC 12(b)(1); |
| Plaintiff, *pro se*, | * | *Pro Se*; |
| | * | 28 U.S.C. § 2501. |
| v. | * | |
| | * | |
| THE UNITED STATES, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Michael Harris**, Lake City, Florida, Plaintiff, *pro se*.

**Anna Bondurant Eley**, United States Department of Justice, Trial Attorney, Washington, D.C., Counsel for the Government.

## MEMORANDUM OPINION AND FINAL ORDER

**BRADEN**, *Judge*.

## I.   RELEVANT BACKGROUND.[1]

On December 1, 2000, Michael Harris ("Plaintiff") filed a Complaint against Corrections Corporation of America ("CCA") and Prison Realty Trust ("PRT") in the United States District Court for the Middle District of Florida, Jacksonville Division ("United States District Court"), alleging that his employer, CCA, engaged in employment discrimination in violation of Title VII

---

[1] The relevant facts discussed herein were derived from: an April 8, 2014 Amended Complaint ("Am. Compl."), including appendices attached thereto ("Am. Compl. App. 1–2"); an April 8, 2014 Notice Of Directly Related Cases ("Pl. Notice"); Plaintiff's December 1, 2001 Complaint filed in the United States District Court for the Middle District of Florida ("Dist. Compl."); CCA's November 24, 2003 Renewed Motion For Judgment As A Matter Of Law or, in the alternative, a Motion For New Trial or a Motion To Alter Or Amend Judgment ("11/24/2003 CCA Dist. Mot."); and the United States District Court for the Middle District of Florida's March 10, 2004 Order ("3/10/2004 Dist. Order").

of the Civil Rights Act of 1964, 42 U.S.C. § 200e *et seq.* *See Harris v. Corrections Corp. of Am.*, No. 3:00-cv-01297-UATC-MCR (M.D. Fla. 2004).

That Complaint alleged that Plaintiff was passed over for promotions and denied pay raises on the basis of his race, he was treated unfairly in various situations on the basis of his race, his grievances regarding harassment and discrimination were ignored by CCA, he was ultimately terminated by CCA in retaliation for both "filing a complaint with [Equal Employment Opportunity Commission] and receiving Worker[s'] Compensation benefits," and as a result he suffered "irreparable damage [to his] career and . . . reputation." Dist. Compl. ¶¶ 1, 2, 3, 24; *see generally* Dist. Compl.; Dist. Compl. at 4.

Prior to trial, the United States District Court required both parties to proffer stipulations, in lieu of offering evidence at trial. Am. Compl. 2. CCA provided stipulations, to which Plaintiff objected. Am. Compl. 2. The District Court convened a jury trial on November 3, 2003 through November 5, 2003. 3/10/2004 Dist. Order 1. At trial, the District Court took care to explain the proposed stipulations to Plaintiff, who thereafter initialed the document to "show [his] approval." Am. Compl. 2. The Stipulated Agreement ("Agreement") contained background factual information concerning Plaintiff's employment at CCA and the chronology of events leading up to his termination. *See generally* Am. Compl. App. 2. After both parties had initialed the Agreement, the District Court read the stipulations to the jury. 3/10/2004 Dist. Order 2. On November 5, 2003, the jury returned a verdict for Plaintiff, finding that CCA "had retaliated against Plaintiff for exercising his rights under Title VII of the Civil Rights Act of 1964," 42 U.S.C. § 2000e-5. 3/10/2004 Dist. Order 1. The jury awarded Plaintiff $600,000 in back pay and $150,000 for "emotional pain and mental anguish." 3/10/2004 Dist. Order 1. The jury also found that Plaintiff had not established that CCA "discriminated against him on the basis of his race in the terms of his employment or that [CCA] had created a racially hostile working environment." 3/10/2004 Dist. Order 1. On November 6, 2003, the District Court entered judgment on the jury verdict.

On November 24, 2003, CCA filed a Renewed Motion For Judgment As A Matter Of Law, pursuant to Fed. R. Civ. P. 50(a)(1), or, in the alternative, a Motion For New Trial or a Motion To Alter Or Amend Judgment ("11/24/2003 CCA Dist. Mot."). In its motion, CCA argued that Plaintiff failed to produce any evidence at trial that "would support a finding of unlawful retaliation against [CCA]" and also made improper closing arguments which confused the jury. 11/24/2003 CCA Dist. Mot. ¶¶ 6, 18. In addition, CCA contended that, even if Plaintiff's unlawful retaliation claim was supported by credible evidence, the damage award was clearly erroneous. 11/24/2003 CCA Dist. Mot. 6.

On March 10, 2004, the District Court granted CCA's November 24, 2003 Renewed Motion For Judgment As A Matter Of Law and found that Plaintiff failed to adduce admissible evidence sufficient to establish the elements of an unlawful retaliation claim entitling to damages, so the jury award was "based upon pure speculation." 3/10/2004 Dist. Order 6, 8, 12. Consequently, the District Court vacated the November 6, 2006 Judgment for the Plaintiff. The District Court also stated that it would grant CCA's Motion For A New Trial, if the judgment for CCA was reversed on appeal, but denied CCA's Motion To Alter or Amend Judgment. 3/10/2004 Dist. Order 12–13. On March 11, 2004, the District Court entered Judgment in favor of CCA.

On April 9, 2004, Mr. Harris filed a Notice Of Appeal in the District Court, regarding the District Court's March 10, 2004 Order. On April 22, 2004, the District Court granted Plaintiff's April 9, 2004 Notice Of Appeal. On August 4, 2005, the United States Court of Appeals for the Eleventh Circuit affirmed the District Court's grant of judgment in favor of CCA, as a matter of law. *Harris v. Corrections Corp. of America*, 139 Fed. App'x 156 (11th Cir. 2005).

In the following seven to eight years, "Plaintiff [] filed numerous post-trial motions unsuccessfully seeking to reinstate the jury verdict." 7/23/2013 Dist. Order. On August 22, 2007, Plaintiff filed a Motion For Relief For Fraud ("8/22/2007 Pl. Dist. Mot."), alleging that CCA and the District Court Clerk's Office conspired to back-date CCA's 11/24/2003 post-trial motion to ensure that it was timely. 8/22/2007 Pl. Dist. Mot. 2–3. On October 26, 2007, the District Court also denied Plaintiff's August 22, 2007 Motion For Relief For Fraud ("10/26/2007 Dist. Order"), because the "record clearly and unequivocally establishes that no fraud was perpetrated on the [District] Court and Plaintiff[.]" 10/26/2007 Dist. Order 2.

On June 26, 2013, Plaintiff filed a Motion To Compel Enforcement Of Court Order. Therein, Plaintiff specifically argued that, although the District Court's 3/10/2004 Order ruled in favor of CCA on the Title VII retaliation claim, it ruled in Plaintiff's favor with respect to his Workers' Compensation retaliation claim. Nevertheless, the United States District Court reversed the entire damages award, not simply the damages corresponding to Title VII retaliation claim. Thus, Plaintiff argues, he is entitled to at least half the jury award. 6/26/2013 Pl. Dist. Mot. 1–2; *see also* Am. Compl. 2 n. 2 ("There were two [c]laims of retaliation that [b]oth parties stated needed no further proof. Harris Title VII and state workers' compensation [c]laims.").

On July 23, 2013, the United States District Court for the Middle District of Florida denied Plaintiff's June 26, 2013 Motion To Compel Enforcement Of Court Order for lack of jurisdiction. The District Court held that it "lost jurisdiction to consider matters related to the merits of Plaintiff's case when he filed his Notice of Appeal [on April 9, 2004]." 7/23/2013 Dist. Order.

On August 8, 2013, Plaintiff filed a Motion For Reconsideration And Enforcement Of Stipulated Fact Agreement challenging the District Court's July 23, 2013 Order and argued, for the first time, that CCA violated the 11/3/2003 Pre-trial Statement when it filed the November 24, 2003 post-trial Motion For Judgment As A Matter Of Law. Plaintiff also argued that CCA conceded each element necessary to prove Plaintiff's Title VII and Workers' Compensation retaliation claims when it agreed to the stipulations and was judicially estopped from re-arguing those issues in its post-trial motion. 8/8/2013 Pl. Mot. 24–25. On August 29, 2013, Plaintiff amended the August 8, 2013 Motion to add that the District Court decision was not final, because the District Court never calculated pre-judgment interest. 8/8/2013 Pl. Am. Mot. 22–24. On October 10, 2013, the District Court denied the Plaintiff's amended August 8, 2013 Motion for lack of jurisdiction, as the matter was on appeal.

## II.   PROCEDURAL HISTORY.

On March 25, 2014, Plaintiff filed a Complaint in the United States Court of Federal Claims, together with two Appendices: (1) the Agreement ("Compl. App. B"); and (2)

verification that the Agreement was admitted by and part of the United States District Court's record.

The Agreement contained the following factual stipulations:

- Plaintiff is an African-American and a member of a protected class under Title VII. Compl. App. A ¶ B.

- Plaintiff was employed by CCA at its correctional facility in Lake City, Florida and supervised by Chief of Security Steve Lister from January 6, 1997 until his employment was terminated by Warden David Eads on April 17, 2000. Compl. App. B ¶ B, C, E.

- Plaintiff was promoted to Shift Supervisor in late July 1997 and remained in that capacity until his termination. Compl. App. B ¶ I.

- From September 8, 1999 to May 8, 2000, Plaintiff filed "at least three" discrimination claims against CCA with the United States Equal Employment Opportunity Commission ("EEOC"). Compl. App. B ¶ D.

- On September 16, 1999, Plaintiff was injured during his employment, after which he was put on leave from September 19, 1999 to March 13, 2000, and received "medial and wage loss benefits from CCA's workers' compensation insurance carrier." Compl. App. B ¶ L, M.

- On December 27, 1999, while on leave, Plaintiff "went to work for the Florida Department of Corrections" as a corrections officer, intending to "complete a one-year probationary period of employment with the Florida Department of Corrections and to thereafter quit his employment with CCA." Compl. App. B ¶ N–P.

- On March 13, 2000, Plaintiff returned to work at CCA. Compl. App. B ¶ R.

- Over the following month, Warden Eads repeatedly attempted to discuss Plaintiff's employment with the Florida Department of Corrections, but Plaintiff rebuffed his inquiries, calling the matter a "workers' comp issue." Compl. App. B ¶ R–U.

- On April 17, 2000, Warden Eads terminated Plaintiff's employment, because of his unwillingness to provide the information requested. Compl. App. B ¶ V.

The March 25, 2014 Complaint, filed in the United States Court of Federal Claims, alleges claims for: breach of contract; a violation of the Seventh Amendment right to a jury trial; and a violation of the Fourteenth Amendment right to due process. Compl. 1. The Complaint also alleges that CCA retaliated after he filed discrimination claims and engaged in "fraud on the [c]ourt." Compl. 1. Plaintiff seeks a jury trial to adjudicate a breach of the Agreement,

enforcement of the Agreement, and payment of damages for pain and suffering caused CCA's and PRT's breach and for "misleading the [District Court] into [taking] actions against [Plaintiff]." Compl. 4.

The March 25, 2014 Complaint alleges that CCA violated the Agreement by filing the November 24, 2003 Renewed Motion For Judgment As A Matter Of Law, or in the alternative, a Motion For New Trial or a Motion To Alter Or Amend Judgment. The District Court also breached the Agreement, to which it was also bound, by granting CCA's post-trial motion. Compl. 3–4; *see also* 3/10/2004 Dist. Order. The Complaint further alleges that the breach by CCA and by the District Court violated Plaintiff's Seventh Amendment rights and his right to due process of law under the Fourteenth Amendment to the United States Constitution. In addition, Plaintiff suffered considerable harm to his reputation for appearing in court, for which he seeks damages. Compl. 3–4. Finally, the Complaint alleges that the statute of limitations does not apply in this case, because the District Court's judgment never became final and CCA is still in violation of the Agreement. Compl. 4.

On April 8, 2014, Plaintiff filed an Amended Complaint ("Am. Compl.") in the United States Court of Federal Claims to: (1) correct a citation to *VanDesande v. United States*, 673 F.3d 1342 (Fed. Cir. 2012); (2) further clarify the breach of contract claim; and (3) request appointment of counsel. Attached thereto were Appendix 1 and Appendix 2. In addition, Plaintiff filed a Notice Of Directly Related Cases, pursuant to RCFC 40.2, to inform the court of the prior litigation in the United States District Court for the Middle District of Florida.

On May 20, 2014 the Government filed a Motion For Summary Dismissal, pursuant to RCFC 12(b)(1), arguing that the United States Court of Federal Claims does not have jurisdiction to adjudicate claims alleged in either the March 25, 2014 Complaint and April 8, 2014 Amended Complaint (Gov't Mot.").

To date, Plaintiff has not filed a Response.

## III.   DISCUSSION.

### A.   Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

Therefore, to pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1093–94 (Fed. Cir. 2004) ("[J]urisdiction under the

Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act . . . ."); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) ("The Tucker Act . . . does not create a substantive cause of action; . . . a plaintiff must identify a separate source of substantive law that creates the right to money damages. . . . [T]hat source must be 'money-mandating.'"). Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "can fairly be interpreted as mandating compensation by the Federal Government." *United States v. Mitchell*, 463 U.S. 206, 217 (1983) (quoting *Testan*, 424 U.S. at 400). And, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

## B.    Standard Of Review For Pro Se Litigants.

The pleadings of a *pro se* plaintiff are held to a less stringent standard than those of litigants represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers"). It has been the tradition of this court to examine the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 412 F.2d 1285, 1292 (Ct. Cl. 1969). Nevertheless, while the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

## C.    Standard Of Review For A Motion To Dismiss Pursuant To RCFC 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . . is properly raised by a [Rule] 12(b)(1) motion." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) (allowing a party to assert, by motion, "lack of subject-matter jurisdiction"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations [of the complaint] to be true and to draw all reasonable inferences in plaintiff's favor." *Henke*, 60 F.3d at 797.

## D.    The Government's May 20, 2014, Motion For Summary Dismissal Of *Pro Se* Complaint.

### 1.    The Government's Argument.

The Government argues that both the March 25, 2014 Complaint and the April 8, 2014, Amended Complaint fail to allege a claim within this court's jurisdiction. Gov't Mot. 1. CCA and PRT cannot be sued in the United States Court of Federal Claims, because the court's jurisdiction is limited to claims against the United States. Gov't Mot. 2–3.

Further, even if the Complaint and Amended Complaint were construed as alleging claims against the Government, the court lacks jurisdiction to adjudicate the alleged claims. First, with respect to the District Court's granting of CCA's post-trial motion, allegedly in breach of the Agreement, the court "does not have jurisdiction to review the decisions of district courts."

6

Gov't Mot. 3 (quoting *Vereda, Ltda. v. United States*, 271 F.3d 1367, 1375 (Fed. Cir. 2001) (internal quotation omitted)). Second, the court does not have jurisdiction to adjudicate claims under the Seventh Amendment, Gov't Mot. 3 (citing *Webster v. United States*, 74 Fed. Cl. 439, 444 (2006)), or under the Due Process Clause of the Fourteenth Amendment, Gov't Mot. 3 (citing *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995)). Lastly, in response to Plaintiff's assertions that his reputation was damaged, he was subject to retaliation, or he was the victim of a "fraud on the Court," these are tort claims. Gov't Mot. 3 (quoting Am. Compl. 1); *see also id.* (citing 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States . . . in cases not sounding in tort.")).

### 2. The Plaintiff's Response.

Plaintiff did not respond to the Government's May 20, 2014 Motion For Summary Dismissal Of *Pro Se* Complaint.

### 3. The Court's Resolution.

#### a. The United States Court Of Federal Claims Does Not Have Jurisdiction To Adjudicate Claims Against Private Entities.

The only proper defendant in the United States Court of Federal Claims is the Government. *See* 28 U.S.C. § 1491(a)(1); *see also Gump v. United States*, 482 Fed. App'x 588, 590 (Fed. Cir. 2012) ("The United States is the only appropriate defendant in the Court of Federal Claims."). Therefore, all claims against CCA and PRT must be dismissed, because these are private entities. Although Plaintiff indicates there are other defendants by including "*et al.*" in the case caption, neither the March 25, 2014 Complaint nor the April 8, 2014 Amended Complaint identify those entities or individuals. To the extent "*et al.*" indicates that this case is directed against the District Court Judge or an officer of the District Court for granting CCA's post-trial motion, such a claim must be dismissed. *See Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997) ("The Tucker Act grants the Court of Federal Claims jurisdiction over suits against the United States, not against individual federal officials."); *see also Cottrell v. United States*, 42 Fed. Cl. 144, 148 (1998) ("The Court of Federal Claims does not have jurisdiction over individuals; it only has jurisdiction over suits against the United States."). To the extent Plaintiff seeks review of the District Court's decision, Plaintiff's remedy lies with appeal to the United States Court of Appeals for the Eleventh Circuit.

#### b. The United States Court Of Federal Claims Does Not Have Jurisdiction To Adjudicate Plaintiff's Contract Breach Claim Because The Stipulation Agreement Did Not Constitute A Contract With The United States Government.

The United States Court of Appeals for the Federal Circuit has held that "to invoke jurisdiction under the Tucker Act, a plaintiff must identify a contractual relationship, constitutional provision, statute, or regulation that provides a substantive right to money damages." *Khan v. United States*, 201 F.3d 1357, 1377 (Fed. Cir. 2000); *see also Todd*, 386 F.3d at 1094 ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right

for money damages against the United States separate from the Tucker Act itself."). Our appellate court, however, has discussed the difference between contract claims and claims based on federal statutes, constitutional provisions, or regulations. *See Holmes v. United States*, 657 F.3d 1303, 1313–14 (Fed. Cir. 2011) ("In our view, when referencing the money-mandating inquiry for Tucker Act jurisdiction, the cases logically put to one side contract-based claims."); *see also Tippet v. United States*, 185 F.3d 1250, 1254–55 (Fed. Cir. 1999) ("When a contract is not involved, to invoke jurisdiction under the Tucker Act, a plaintiff must identify a constitutional provision, a statute, or a regulation that provides a substantive right to money damages."). This court's jurisdiction over claims in the latter category depends, in part, on whether the source of the substantive right a plaintiff asserts "can fairly be interpreted as mandating compensation by the . . . Government for the damages sustained." *Holmes*, 657 F.3d at 1313 (citing *Testan*, 424 U.S. at 400 (quoting *Eastport S.S. Corp. v. United States*, 373 F.2d 1002, 1009 (Fed. Cir. 1967))). In contract claims, however, the "money-mandating requirement for Tucker Act jurisdiction normally is satisfied by the presumption that money damages are available for breach of contract[.]" *Holmes*, 657 F.3d at 1314. Yet, this court may properly require a plaintiff to show that the contract at issue "could fairly be interpreted as contemplating money damages" for breach, where the contract "could involve purely nonmonetary relief" or "expressly disavow[s] money damages." *Id.* at 1314–15; *see also Sanders v. United States*, 252 F.3d 1329, 1334 (Fed. Cir. 2001). In this case, Plaintiff claim must be dismissed because he has failed to show, among other things, that the Agreement "could fairly be interpreted as contemplating money damages." *Holmes*, 657 F.3d at 1315.

With this background in mind, the court must determine whether Plaintiff, in fact, had a contract with the Government. Formation of an express contract with the Government requires the following elements:

(1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States in contract.

*Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003); *see also Massie v. United States*, 166 F.3d 1184, 1188 (Fed. Cir. 1999) ("[A]ny agreement can be a contract within the meaning of the Tucker Act, provided that it meets the requirements for a contract with the Government[.]" (quoting *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1326 (Fed. Cir. (1997))).

To contractually bind the Government, its representative "must have actual authority to enter into the contract." *Jumah v. United States*, 90 Fed. Cl. 603, 612 (2009). Such a representative has actual authority to bind the Government "only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms." *Id.* (internal quotation omitted); *see City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990) ("[T]he issue is not whether some authority exists that prohibits [the agent] from obligating the Government in contract; rather, the issue is whether [the agent] had been granted the authority to affirmatively obligate the Government.").

The Agreement in this case, however, is between private parties: Plaintiff and Plaintiff's former employer, CCA. *See generally* Am. Compl. App. 2. But, the District Court did not have

actual authority to bind the Government, who was not a party to the litigation. *See Jumah*, 90 Fed. Cl. at 612.

Instead, the District Court approved the Agreement for purposes of trial and is responsible for overseeing and enforcing the stipulations. *See Ring & Pinion Serv. Inc. v. ARB Corp.*, 743 F.3d 831, 836 (Fed. Cir. 2014) ("A stipulation of fact that is fairly entered into is controlling on the parties and the court is generally bound to enforce it."). As such, to the extent CCA's post-trial motion violated the Agreement, the proper remedy was to object to that filing with the District Court and if that effort was not successful, to file an appeal to the Eleventh Circuit, which Plaintiff did and the District Court's ruling was affirmed. *See Harris v. Corrections Corp. of America*, 139 Fed. App'x 156 (11th Cir. 2005). The United States Court of Federal Claims, by contrast, "does not have jurisdiction to review the decisions of the district courts." *Vereda*, 271 F.3d at 1375 (quoting *Joshua v. United States*, 17 F.3d 378, 380 (Fed. Cir. 1994)).

Even assuming, *arguendo*, that the Agreement is a contract between the District Court and Plaintiff, and the District Court had actual authority to contractually bind the Government and purported to do so, Plaintiff's breach claim must still be dismissed for lack of jurisdiction because the Agreement cannot "fairly be interpreted as contemplating money damages for breach." *Holmes*, 657 F.3d at 1315. As mentioned, the court may properly require Plaintiff to show that the contract at issue "can fairly be interpreted as contemplating money damages for breach," where the contract "could involve purely nonmonetary relief[.]" *Id.* The Agreement at issue contains factual background information concerning Plaintiff's employment and a chronology of events leading up to his termination. *See generally* Am. Compl. App. 2. Nothing in the language contained therein indicates money damages were contemplated as a remedy for breach. *See id.*

The Agreement at issue here serves as a trial management tool and is readily distinguishable from *VanDesande*, the case Plaintiff cites to buttress his contention that this court has jurisdiction to adjudicate his claims. This case is also distinguishable from *Holmes*.

The stipulation agreement in *VanDesande v. United States*, 673 F.3d 1342, 1343 (Fed. Cir. 2012), "result[ed] from a settlement of an earlier personnel case" between the plaintiff and the United States Postal Service. *Id.* It included "compensation for back pay and overtime; lost sick and annual leave; interest payments; tax consequence payments; payments for pain and suffering; medical and other expenses; and . . . a lump sum payment in exchange for Ms. VanDesande's resignation." *Id.* at 1351 n.4. Such an agreement, by its terms, clearly contemplated monetary damages in the event of breach by Ms. VanDesande's employer, *i.e.* failing to make the payments agreed upon. Moreover, the issue in *VanDesande* was whether the United States Court of Federal Claims had jurisdiction to adjudicate a contract claim alleging breach of a settlement agreement, which was incorporated in a consent decree, or if the forum that issued the decree retains exclusive jurisdiction. *See id.* at 1346–47. The Federal Circuit did not explicitly address the question of whether the settlement agreement "could fairly be interpreted as contemplating money damages for breach." *Holmes*, 657 F.3d at 1315; *see id.* at 1351 (footnote omitted) (internal quotation marks omitted) ("Furthermore, the circumstances under which the Agreement was entered into by the parties to it, and its extensively detailed terms, leave little doubt about its legal character. Thus, we agree with the opinion of another of

our sister circuits that a settlement agreement, even one embodied in a decree, is a contract within the meaning of the Tucker Act.").

Likewise, in *Holmes*, the United States Court of Appeals for the Federal Circuit held that the United States Court of Federal Claims had jurisdiction under the Tucker Act, 28 U.S.C. § 1491, over a suit alleging breach of two Title VII settlement agreements, in part, because each could "fairly be interpreted as mandating the payment of money damages for breach by the government." *Holmes*, 657 F.3d at 1306, 1312. Under the first settlement agreement—the 1996 Agreement—the Navy "agreed to document Mr. Holmes's [Office Personnel Folder] to show that he had resigned on July 22, 1994 for personal reasons." *Id.* at 1315 (citations omitted). Under the second settlement agreement—the 2001 Agreement—the Navy agreed to "take the necessary steps, within a reasonable time, to expunge from [Mr. Holmes's] Official Personnel File, the fourteen-day suspension and to provide the Marine Index Bureau . . . with a neutral reference for [Mr. Holmes]." *Id.* at 1315–16. The Federal Circuit held that because both agreements "inherently relate to monetary compensation through relationship to Mr. Holmes's future employment" each could "fairly be interpreted as mandating the payment of money damages for breach by the government." *Id.* at 1306, 1316.

The Agreement in this case, however, is simply a list of stipulated facts. *See generally* Am. Compl. App. 2. It is not a settlement agreement providing for various payments as in *VanDesande* and it does not "relate to monetary compensation through [its] relationship to [Plaintiff's] future employment." *VanDesande*, 673 F.3d at 1351 n.4; *Holmes*, 657 F.3d at 1316; Am. Compl. App. 2. Nor is it even an agreement between Plaintiff and the Government. *Cf. Vandesande*, 673 F.3d at 1343. Thus, for the aforementioned reasons, Plaintiff's contract breach claims must be dismissed for lack of jurisdiction.

### c.   The United States Court Of Federal Claims Does Not Have Jurisdiction To Adjudicate Tort Claims.

The April 8, 2014 Amended Complaint also alleges that CCA retaliated against Plaintiff, by terminating his employment, for bringing Title VII discrimination claims in the District Court, and that his reputation has suffered considerable damage "by the actions or in[]actions of the [District Court], for which he seeks damages. Am. Compl. 1, 4–5; *see also* Am. Compl. App. 2 ¶¶ A, D. It also alleges that "these acts" committed by CCA, PRT, and the District Court, constitute "a fraud on the Court." Am. Compl. 1.

Plaintiff's first claim—that the District Court's actions and inactions caused him reputational damage, or constituted defamation— must be dismissed, as the court does not have jurisdiction to adjudicate tort claims. *See* 28 U.S.C. § 1491 ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim . . . for liquidated or unliquidated damages . . . in cases not sounding in tort."); *Frawley v. United States*, 14 Cl. Ct. 766, 767-68 (1988) (dismissing plaintiff's claim for damage to reputation as a tort claim beyond the jurisdiction of the United States Court of Federal Claims); *see also Matthews v. United States*, 72 Fed. Cl. 274, 279 (2006) (dismissing plaintiff's claims for libel and defamation as tort claims beyond the jurisdiction of the United States Court of Federal Claims).

Plaintiff's fraud claim appears to arise from Plaintiff's perception that CCA and the District Court Clerk's Office conspired to back-date CCA's post-trial motion to ensure that it was timely. 8/22/2007 Pl. Dist. Mot. 2–3; *see also* 10/26/2007 Dist. Order 1–2. Fraud is a tort and, as such, that claim also must be dismissed for lack of jurisdiction. The United States District Court is the proper forum to bring tort claims. *See* 28 U.S.C. § 1346(b)(1) ("[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]"); *see also* 28 U.S.C. § 1491 ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim . . . for liquidated damages . . . in cases not sounding in tort.").

### d.   The United States Court Of Federal Claims Does Not Have Jurisdiction To Adjudicate Claims Arising From Violations Of The Seventh Amendment Or Violations Of The Due Process Clause Of The Fourteenth Amendment.

The April 8, 2014 Amended Complaint also alleges that CCA and the District Court violated Plaintiff's Seventh Amendment rights when the District Court allowed CCA to argue, in its post-trial motion, matters stipulated in the Agreement. Am. Compl. 3. Again, this court's jurisdiction is limited to claims based on a substantive right to money damages against the Federal Government. *See Todd*, 386 F.3d at 1094. The source of the substantive right "need not *explicitly* provide that the right or duty it creates is enforceable through a suit for damages, but it triggers liability only if it 'can fairly be interpreted as mandating compensation by the Federal Government.'" *Holmes*, 657 F.3d at 1309 (quoting *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009)).

A violation of the Seventh Amendment does not, however, "explicitly or implicitly obligate[] the [F]ederal [G]overnment to pay damages[.]" *Jaffer v. United States*, No. 95-5127, 1995 WL 592017, at *2 (Fed. Cir. Oct. 6, 1995). Accordingly, the court does not have jurisdiction to adjudicate claims arising from a violation of due process. Therefore, Plaintiff's Seventh Amendment claim must be dismissed.

Plaintiff's April 8, 2014 Amended Complaint also alleges that CCA and the District Court violated Plaintiff's due process rights under the Fourteenth Amendment, when CCA breached the Agreement by filing its post-trial motion. Am. Compl. 3. As an initial matter, the Fourteenth Amendment is only applicable against the States, not the Federal Government. More significantly, a violation of the Due Process Clause of the Fifth or Fourteenth Amendment does not "mandate payment of money by the [G]overnment." *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995); *see also Collins v. United States*, 67 F.3d 284, 288 (Fed. Cir. 1995) (holding the same with respect to violations of the Fifth Amendment). Accordingly, the court does not have jurisdiction to adjudicate claims arising from a violation of due process. *See Collins*, 67 F.3d at 288. Therefore, Plaintiff's due process claim must be dismissed.

* * *

## IV.    CONCLUSION.

For these reasons, the United States Court of Federal Claims does not have jurisdiction to adjudicate the causes of action alleged in Plaintiff's Complaint and Amended Complaint. Therefore, the Government's May 20, 2014 Motion For Summary Dismissal Of *Pro Se* Complaint is granted. *See* RCFC 12(b)(1). Accordingly, the Clerk is directed to dismiss the April 8, 2014 Amended Complaint.

**IT IS SO ORDERED.**

**SUSAN G. BRADEN**
**Judge**

12